Darrell Sprowl, plaintiff, appeals from a judgment entered on a jury verdict against him in this dental malpractice case. We affirm.
The facts are essentially undisputed. Sprowl, after suffering from a toothache for several weeks, made an appointment with Dr. Ward. After an initial examination and X-rays, Dr. Ward diagnosed Sprowl's problem and advised Sprowl that it could be treated by either a root canal or extraction of the affected tooth. Sprowl elected to have Dr. Ward perform the root canal. The initial X-rays revealed that there was a big amalgam filling which was pin-retained in the tooth. The presence of this filling gave Dr. Ward reason to be concerned about the use of a rubber dam during the root canal procedure. A rubber dam is specifically designed for use during this operation to prevent debris from falling into the patient's mouth and being swallowed. The rubber dam is held in place by a clamp which is actually placed around the affected tooth. The clamp adheres very tightly and could damage or fracture a weak tooth or an amalgam filling. In this case, Dr. Ward made the decision, without consulting Sprowl, not to use the rubber dam, because of the risk of fracturing the filling or tooth, which would cause additional expense and discomfort to the patient.
In the course of the root canal procedure, Dr. Ward allowed a dental file, which is a metal, spiral-shaped file about one-and-one-quarter inches long, to drop into Sprowl's mouth and be swallowed. Sprowl ultimately passed the file, apparently without physical injury.
Sprowl filed this suit against Dr. Ward. The complaint contained counts alleging negligence, wanton conduct, breach of contract, and the tort of bad faith. Prior to the trial, the court below dismissed the last count for failure to state a claim upon which relief could be granted. The case proceeded to trial on the remaining counts. Both parties requested a directed verdict, and both motions were denied. The case was submitted to the jury on those remaining counts, and the verdict was returned in favor of Dr. Ward. The plaintiff's motion for judgment notwithstanding the verdict was denied. This appeal follows.
Sprowl raises two issues. He first argues that the trial judge erred in refusing to grant his motion for directed verdict or, alternatively, his motion for judgment notwithstanding the verdict. He contends that Dr. Ward breached his duty of care by dropping the dental file into Sprowl's mouth, failing to use a rubber dam during the root canal procedure, and failing to obtain emergency medical services for Sprowl immediately following the accident. Sprowl argues that the evidence does not support the verdict against him, because he has proven all of the elements necessary for a recovery in both tort and contract.
The law in Alabama requires Sprowl to prove that Dr. Ward acted below the standard of care required by law in order to recover under either the tort or contract theory. Ala. Code 1975, § 6-5-484. Expert medical testimony is required to establish this standard of care. Gilbert v. Campbell,440 So.2d 1048 (Ala. 1983).
Dr. Ward was the only expert to testify at the trial. He admitted that the file slipped from his fingers and was swallowed by Sprowl. He also admitted that if he had used a rubber dam during the procedure, Sprowl would not have ingested the dental file. However, there was no evidence that Dr. Ward acted below the applicable standard of care in failing to use a rubber dam. Dr. Ward stated that the majority of dentists he knew did not use a rubber dam regularly and that he uses them only infrequently. He agreed that the dam is effective to prevent debris from falling *Page 900 
down the patient's throat, but would not say that its use was generally accepted.
Dr. Ward explained that there are circumstances under which the use of the rubber dam may be harmful. It was his opinion that the use of the dam in Sprowl's case might cause the filling to fracture and cause economic hardship to Sprowl. Excerpts from a text on endodontics, recognized by Dr. Ward to be one of the leading authorities on the subject, were admitted into evidence. A portion of this text listed various alternative ways of using the rubber dam. Sprowl argues that Dr. Ward was negligent in failing to use one of these alternatives once he realized that the traditional method would do damage.
The decision to use one method of treatment as opposed to others, where there is reasonable doubt as to the proper course, is not a breach of duty. McTyeire v. McGaughy, 222 Ala. 100,130 So. 784 (1930). Dr. Ward, based on his expert knowledge and skill, made the decision to forego the use of the dam in this case. Under these facts and according to the expert testimony presented, the decision not to use a dam was a "method of treatment." Under these circumstances, the jury was authorized to hold that Dr. Ward was not liable for his good faith decision to use one method over another, where there was evidence that the decision was made using reasonable care, and the method chosen was proper according to the standards followed in his field by dentists in the same general neighborhood.
The evidence shows that Dr. Ward was not mishandling the dental file at any time. The file slipped from his fingers by accident. The question of whether Dr. Ward had breached any duty to the patient in this regard was also properly submitted to the jury. We will not disturb the verdict in the absence of a showing that it is against the great weight of the evidence or manifestly unjust. Osborne v. Cobb, 410 So.2d 396 (Ala. 1982).
Sprowl's last allegation of negligence is that Dr. Ward failed to provide emergency medical treatment to Sprowl. The evidence clearly does not support this argument. It is undisputed that Dr. Ward almost immediately attempted to locate two surgeons who he believed would be able to give Sprowl the best treatment. He let Sprowl leave his office only after being satisfied that he was in no immediate danger and did not exhibit any signs of distress. Furthermore, there was no expert testimony from a physician that Dr. Ward's conduct, which included questioning Sprowl about pain and discomfort and keeping Sprowl from becoming unduly excited, was beneath the expected standard of care.
Sprowl's second allegation of error is that the trial court erred in dismissing the count alleging the tort of bad faith breach of contract. In Brown-Marx Associates, Ltd. v. EmigrantSavings Bank, 527 F. Supp. 277 (N.D.Ala. 1981), the district court correctly stated the present status of the tort of bad faith under Alabama law:
 "This court concludes that the Alabama Supreme Court has not recognized an implied duty in law, as distinguished from an implied covenant, of good faith except in `an insurance contract context.' The court thus further concludes that the Supreme Court of Alabama has not applied the bad faith tort action to other than insurance contracts. This court is of the opinion that the Supreme Court of Alabama would be hesitant to do so without a full exploration of the ramifications of such an action." [Emphasis in original.]
527 F. Supp. at 283. The trial court correctly granted Dr. Ward's motion to dismiss this count.
The plaintiff's case was properly submitted to the jury, since he produced by his evidence an inference, at least, of negligence on the part of Dr. Ward in not using a dam while conducting the root canal procedure. Evidence in the form of a recognized text on the subject supported the plaintiff's claim. Dr. Ward, on the other hand, offered evidence, albeit his own opinion, which, if believed, furnished a justification for not using the dam under the circumstances of this case. The jury simply believed the doctor. This it had a right to do. *Page 901 
There being no error committed by the trial court, we affirm the judgment.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.