PER CURIAM.
 

 Floyd A. Gant and Renee F. Gant appeal from a summary judgment entered by the Mobile Circuit Court insofar as it determined that the Gants had intentionally defrauded Azalea City Credit Union (“Azalea City”) and awarded it $100 in punitive damages. We reverse and remand.
 

 The Gants borrowed $45,090 from Azalea City on January 28, 2009. In their loan application, the Gants listed 16 welding inverters as collateral for the loan. The Gants provided Azalea City with two purchase orders for the inverters, with each purchase order listing eight inverters. The purchase orders showed that the inverters had been ordered by and would be delivered to G-l Mechanical, Inc. (“G-l”), a corporation of which the Gants were president and vice president. The Gants later defaulted on the loan to Azalea City.
 

 On April 20, 2010, Azalea City filed a complaint in the trial court, in which it claimed that the Gants had defaulted on the loan and that the Gants had fraudulently misrepresented their ownership of the inverters. Azalea City requested that the trial court award it $37,728.41, representing the balance of the loan, attorney fees, interest, and costs. Azalea City also requested that the trial court award it unspecified compensatory and punitive damages on its fraud claim. The Gants answered Azalea City’s complaint, denying all of its material allegations.
 

 Azalea City moved the trial court for a summary judgment on July 6, 2010. In support of its motion for a summary judgment, Azalea City attached an affidavit of Deborah Chestang, the assistant manager of Azalea City. Chestang asserted in her affidavit that, at the time of the loan, the Gants had represented to Azalea City and
 
 *882
 
 had provided it with documentation indicating that the inverters were “paid for” and were “free and clear” of liens. Ches-tang further asserted that Azalea City had subsequently learned that the Gants had never paid for the inverters and that other parties already had a security interest in the inverters.
 

 In response to Azalea City’s motion for a summary judgment, the Gants filed a cross-motion for a summary judgment on Azalea City’s fraud claim and, alternatively, moved the trial court to continue the hearing on Azalea City’s motion for a summary judgment. In their cross-motion for a summary judgment, the Gants alleged that Azalea City could not prove its fraud claim because, the Gants alleged, Azalea City could not have reasonably relied on any assertions by the Gants that they had already paid for or that they owned the inverters. The Gants argued that Azalea City could not prove reasonable reliance because the documentation — the purchase orders — provided to Azalea City by the Gants, and on which Azalea City claims it relied when it agreed to loan money to the Gants, showed that the Gants did not own the inverters at that time.
 

 Azalea City later filed an affidavit of its attorney, Gregory B. McAfee, in which he stated that he had learned that the inverters had been delivered to G-l for only one day and then were reclaimed by the supplier. McAfee further asserted that G-l had obtained the inverters for only one day for a “dog and pony show” for a potential client.
 

 Following a hearing, the trial court entered a summary judgment in favor of Azalea City on September 3, 2010. In its summary judgment, the trial court awarded $45,945.32 plus costs on Azalea City’s loan-default claim. The trial court further determined that the Gants had intentionally defrauded Azalea City and awarded Azalea City $100 as punitive damages. The Gants appealed to the Alabama Supreme Court. Our supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 “Our review of a summary judgment is de novo. ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’
 
 Reichert v. City of Mobile,
 
 776 So.2d 761, 764 (Ala.2000). We apply ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988);
 
 System Dynamics Int’l, Inc. v. Boykin,
 
 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Borders v. City of Huntsville,
 
 875 So.2d 1168, 1176-77 (Ala.2003). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw.
 
 See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.2000); and
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991).
 

 On appeal, as in the trial court, the Gants challenge only Azalea City’s claim
 
 *883
 
 that they fraudulently misrepresented their ownership of the inverters to Azalea City. The Gants argue that Azalea City could not have reasonably relied on any alleged assertion by the Gants that they owned the inverters at the time they completed the loan application because, the Gants say, the written documentation supplied by the Gants refuted that assertion. The Gants assert that the purchase orders showed that G-l had recently purchased the inverters on a “Net 30” basis.
 
 [1]
 
 The Gants maintain that, because the purchase orders showed that G-l owned the inverters, Azalea City could not have reasonably relied on any oral statements from them implying that they, as individuals, owned the inverters.
 
 [2]
 

 The elements of a fraudulent-misrepresentation claim are: “(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.”
 
 Padgett v. Hughes,
 
 535 So.2d 140, 142 (Ala.1988). The Alabama Supreme Court expounded on the requirement that a party show that it reasonably relied on a misrepresentation in
 
 AmerUs Life Insurance Co. v. Smith,
 
 5 So.3d 1200 (Ala.2008):
 

 “This Court explained the reasonable-reliance principle in
 
 Torres v. State Farm [Fire
 
 ]
 
 & Casualty Co.,
 
 438 So.2d 757, 758-59 (Ala.1983):
 

 “ ‘Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one’s own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs’ reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.
 
 Bedwell Lumber Co. v. T & T Corporation,
 
 386 So.2d 413, 415 (Ala.1980).
 

 “ ‘ “If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies,
 
 ‘volunti [sic] non fit injuria.’
 
 ”3
 

 “‘Munroe v. Pritchett,
 
 16 Ala. 785, 789 (1849).’
 

 [[Image here]]
 

 “... [T]he reasonable-reliance standard imposes ... on a plaintiff a ‘general duty ... to read the documents received in connection with a particular transaction,’
 
 Foremost [Ins. Co. v. Par
 
 ham], 693 So.2d [409,] 421 [ (Ala.1997) ], together with a duty to inquire and investigate. ‘Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered.’
 
 Gonzales
 
 
 *884
 

 v. U-J Chevrolet Co.,
 
 451 So.2d 244, 247 (Ala.1984)....
 

 “When reviewing a plaintiffs actions pursuant to the reasonable-reliance standard, this Court has consistently held that a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant’s oral representations that contradict the written terms in the documents....
 

 " 3 See
 
 Black’s Law Dictionary
 
 1605 (8th ed. 2004), defining the maxim 'volenti non fit injuria' as '[t]he principle that a person who knowingly and voluntarily risks danger cannot recover for any resulting injury.’ ”
 

 5 So.3d at 1207-08.
 

 The purchase orders do not reflect ownership of, or an intent to purchase the inverters, by the Gants. They show an actual purchase of the inverters on credit by G-l, a separate entity.
 
 [3]
 
 In its brief to this court, even Azalea City does not dispute that point. Azalea City simply argues that it could have reasonably relied on the oral statements of the Gants despite the documents showing that the Gants had not acquired the inverters, which is contrary to the law.
 

 The parties disagree as to whether Azalea City could have discovered the true ownership of the inverters by checking Uniform Commercial Code (“UCC”) filings in the Secretary of State’s database. We find that disagreement to be immaterial. Regardless of whether the UCC filings would have given Azalea City additional information regarding G-l’s ownership, the fact remains that the documents in the possession of Azalea City already indicated that the Gants did not own the inverters, as they allegedly misrepresented.
 

 The written information contained in the purchase orders provided to Azalea City by the Gants contained information that should have provoked an inquiry by Azalea City as to whether the Gants, in fact, owned the inverters at the time that they applied for their loan. Therefore, Azalea City could not have reasonably relied on the alleged representations by the Gants that they owned the inverters free of any liens.
 
 See Woodlawn Fraternal Lodge No. 525, F. & A.M. v. Commercial Union Ins. Co., O.M.,
 
 510 So.2d 162, 164 (Ala.1987) (“[T]he policy of the law is that it is unreasonable to rely on oral statements when one is in possession of written documents that would put one on notice as to the validity of oral statements. By the same token, the written documents put the party to whom oral representations were made in a position to discover the falsity of those representations, thereby putting him on notice as a matter of law that a fraud may have been committed.”). Absent proof of reasonable reliance, Azalea City cannot recover for fraud.
 
 See AmerUs Life Ins. Co.,
 
 5 So.3d at 1207-08.
 

 Because Azalea City has not demonstrated that, as a matter of law, it reasonably relied on the representations of the Gants, the trial court erred in entering a summary judgment on Azalea City’s fraud claim. Therefore, we reverse the portion of the judgment of the trial court determining that the Gants had defrauded Azalea City, and we remand the cause for
 
 *885
 
 further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . "Net 30” is a commercial term referring to a form of trade credit whereby a seller gives a purchaser 30 days after goods are shipped to pay an invoice for those goods.
 
 See Energy & Process Corp. v. Jim Dally & Assocs., Inc.,
 
 291 Ga.App. 772, 772, 662 S.E.2d 835, 837 (2008).
 

 [2]
 

 .
 
 Azalea City maintains in its brief to this court that the Gants signed documents "authenticating” their statements of ownership of the inverters. The documents referenced in the brief do contain a description of the inverters as collateral for the loan as well as the signatures of the Gants, but the documents do not contain any statements regarding ownership of the inverters, as Azalea City asserts.
 

 [3]
 

 . The evidence in the record shows that the Gants were officers of G-l. However, the record does not indicate that the Gants possessed an ownership interest in G-l, as Azalea City argues in its brief. At any rate, a corporation is a separate entity from its officers, and its ownership of property is not tantamount to the ownership of that property by its individual officers.
 
 Durbin v. Durbin,
 
 818 So.2d 396, 400 (Ala.Civ.App.2000), rev'd on other grounds,
 
 Ex parte Durbin,
 
 818 So.2d 404 (Ala.2001), on remand, 818 So.2d 409 (Ala.Civ.App.2001).